## H. M. Levering et al. v. R. A. Miller, for use of Joshua Hunt.

1. CROSS-EXAMINATION—*what does not raise question of propriety of.* A general objection made upon cross-examination raises only questions of relevancy and materiality, and does not preserve for review the question as to whether the cross-examination was without the scope of the direct.

2. FRAUDULENT CONVEYANCE—*when grantee participates · in.* A grantee is deemed to have participated in and become a party to a fraudulent conveyance where he has notice of the grantor's fraudulent intent to defeat the claims of creditors by making such conveyance; and this notwithstanding he may have paid some consideration for the conveyance.

Garnishment proceeding. Appeal from the County Court of Moultrie County; the Hon. G. B. WATKINS, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed February 1, 1906.

McNEELY & GOLDEN and HOGAN & WALLACE, for appellants.

THOMAS P. REEP, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a proceeding in garnishment by appellant, Hogan,

against H. M. Levering, master in chancery of Menard county. On December 24, 1904, Joshua Hunt obtained a judgment before a justice of the peace for $163.50 against R. A. Miller, and on December 30th Hunt had a garnishee summons issued against Levering for the purpose of securing certain funds in his hands derived from the estate of Catherine Miller and due Miller as distributee. Upon a trial of said garnishee suit before the justice of the peace, Hogan entered his appearance as adverse claimant of the funds in the hands of Levering, who answered that he held, as master in chancery, $119.37 as distributive share of said Miller in the proceeds of a sale of certain lands, which, by the decree of the Circuit Court of said county, he was ordered to pay to said Miller. A judgment was accordingly entered in favor of Hogan. Hunt prayed an appeal to the County Court of said county, where a trial was had at the May term, 1905. On behalf of appellee there was offered in evidence the docket of the justice of the peace, wherein were recorded the proceedings in the case of Hunt v. Miller, showing a judgment for plaintiff for $163.50 and the issuance of execution December 12, 1904. Levering then testified that, as master in chancery, he held $119.37 payable to Miller under a decree of the Circuit Court. He further testified that he had received notice of an assignment of the same by Miller to appellant prior to the service of the garnishee summons upon him. Appellee then rested and Hogan moved the court to dismiss the case for the reason that there was no proof of the execution returned "no property found", as required by law before the issuance of the garnishee summons. Appellee then asked leave to withdraw the docket and introduce additional testimony. Over Hogan's objection, the justice then inserted on the docket page offered in evidence, and following the memoranda already appearing there, the words, "Execution returned, no property found, to make judgment and costs, this December 30, 1904."

Hogan then introduced in evidence an assignment from Miller to him dated at Taylorville, Ill., December 5, 1904,

which recites that in consideration of $150 in hand paid, Miller assigns to Hogan his interest in a distributive share in the estate of Kate Miller, whose real estate was partitioned in the Menard County Circuit Court and sold December 5, 1904, and directs the master in chancery to pay the same to Hogan upon distribution being approved and the presentation of said order.

Over Hogan's objections, appellee was then permitted to cross-examine Hogan as to all the circumstances in any way connected with the assignment, and as to the previous relations between him and Miller. Appellee then called Miller who testified that on December 5, 1904, he had no personal property except what was exempt from execution and had no real estate except his interest in the said estate of Catherine Miller. No further testimony was introduced by either side; whereupon Hogan asked the court to instruct the jury to return a verdict in his favor, which instruction was refused. The jury returned a verdict in favor of appellee. Judgment was entered upon such verdict to reverse which Hogan prosecutes this appeal.

It is first insisted that the trial court erred in overruling the motion to direct a verdict for Hogan, upon the ground that there was no proof of a return of the execution " no property found." There is no merit in such contention.

Whether or not the court granted leave to the justice to amend his docket, or to make an additional entry therein, is immaterial. It appears from the transcript that when objection was made by appellant to the record of the justice of the peace, because it did not show a return of the execution, the original execution was brought in and exhibited to the court and that from the indorsement upon the back thereof it appeared that the execution had been duly returned *nulla bona* on the 30th day of December, 1904. While the execution and its return were not formally offered in evidence, the trial court treated the presence and exhibition of the same in court as sufficient. It would be purely technical to now hold, in view of the then situation, that the trial court committed a reversible error in allowing

secondary evidence to go to the jury of a fact that the court
in its bill of exceptions recites was fully proven by the
presence and inspection in court of the writ itself and the
return thereto.　If this case was close upon the merits or
if the error was one that could in any way have prejudiced
appellant in the trial of the cause, we might conclude that
it rendered a reversal necessary, but such a condition does
not exist.　Furthermore we think we are fully warranted
in saying that if the objection, as argued in this court, had
been explicitly made in the court below, the execution and
its return, then in court, would have been offered in evi-
dence formally and the objection fully obviated in that way.
The court, therefore, did not err in refusing to direct a ver-
dict for Hogan.

It is next contended that the court erred in permitting
counsel for appellee to cross-examine Hogan as to the cir-
cumstances connected with the procuring of the assignment
in question, and as to his previous relations with Miller, for
the reason that such matters were in no way connected with
what the witness had testified to upon his direct examina-
tion, to wit, the identification of the assignment from Miller
to himself.　Had objections been interposed to the ques-
tions propounded to Hogan upon the ground that they were
improper upon cross-examination, it would have been the
duty of the court to sustain the same.

The objections interposed were general in their char-
acter.　That a question is not proper on cross-examination
is not raised by a merely general objection.　A general ob-
jection raises the question of the relevancy and materiality
only.　Wrisley Co. v. Burke, 203 Ill. 250.

It is finally urged that the court erred in giving to the
jury the first, second and third instructions offered by ap-
pellee.　While these instructions are subject to criticism,
we do not think, in view of the evidence in the record, they
could have misled the jury to such an extent as to necessi-
tate a reversal.

The evidence was sufficient to warrant the jury in find-
ing that the assignment by Miller to Hogan was made with

the intent to hinder and delay appellee in the collection of the judgment he had obtained but a few days previous. Nor can it be said that the jury was unwarranted in finding that Hogan had notice of such fraudulent intention. He admits that at the time of the assignment he knew of the existence of appellee's judgment; that efforts were being made to collect the same; that Miller was then insolvent; that Miller expected to get from $150 to $200 out of the estate. While he claimed that Miller was indebted to him in the sum of about $100, for attorney's fees, money loaned and rent, his recollection as to the various items going to make up such indebtedness is unsatisfactory and indefinite. He further says that he kept no book account against Miller and that he would have been willing to "square off" the indebtedness for $25.

Although it is true that an insolvent debtor may, in good faith, prefer one creditor to another and that, in such case, mere inadequacy of consideration will not render a conveyance fraudulent as to creditors, it is also the law that where a grantee has notice of the grantor's fraudulent intent to defeat the claims of creditors by making the conveyance, such grantee is regarded as participating in the fraud, even though he may have paid some consideration for the conveyance. Clark v. Harper, 215 Ill. 24.

The judgment of the County Court will be affirmed.

*Affirmed.*